## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**UNITED STATES OF AMERICA**,

v.                                          Case No: 8:22-cr-437-WFJ-SPF

**John Lee**
      a/k/a "Giovanni"
_____/

## <u>ORDER</u>

In this ancillary forfeiture proceeding, the United States and the Victim move to dismiss the Petitions and Claim of Interest to Forfeited Property ("Verified Petitions") made by Lawrence J. West ("West") and Joseph Grunberg (collectively with Rosalie Grunberg, Lombard Mutual LLC, and Wolf Grunberg Corp., "the Grunbergs"). Dkts. 130 & 131. West's claim involves a Gray 15.88 Carat Fancy Dark Gray Diamond ("Gray Diamond"). Dkt. 115. The Grunbergs' claim involves a 103.86 Carat D Color Internally Flawless Clarity Cushion Brilliant Cut Natural Diamond ("103 Carat Diamond"). Dkt. 64. The Victim also filed a petition claiming title in the Gray Diamond and the 103 Carat Diamond. Dkt. 123. This Court previously ordered forfeiture of both diamonds to the United States. Dkt. 93. Upon careful consideration, the Court grants the motions to dismiss West's and the Grunbergs' claims for lack of standing. Furthermore, the Court grants the Victim's Petition Claiming Title to the Gray Diamond and 103 Carat Diamond.

## BACKGROUND

On November 6, 2023, pursuant to a plea agreement, John Lee (the "Defendant") pleaded guilty to one count of mail fraud (Count Four) and one count of interstate transportation of stolen property (Count Seven). Dkt. 36 at 1. The Defendant admits he purported to be a "master psychic" who persuaded M.S. to steal jewelry belonging to the Victim. *Id.* at 25–26. The Defendant convinced M.S. that he would "cleanse" the jewelry of "bad spirits/bad feelings" and then return them to M.S. *Id.* at 26. The Court notes that M.S. is serving a prison sentence in the Victim's country for her actions in the instant case. *See* Dkt. 105 at 43:1-18.

On or about July 6, 2022, M.S. pilfered millions of dollars worth of jewelry from the Victim's safe and then sent the valuables to the Defendant via FedEx. Dkt. 36 at 26–27. Instead of "cleansing" the jewelry and returning it, Defendant fenced the valuables to jewelers and watch brokers in New Jersey and New York. *Id.* at 27. After M.S. failed to retrieve the jewelry from the Defendant, she confessed to the Victim about the theft. *Id.*

As it pertains to this ancillary proceeding, Defendant admitted the 103 Carat Diamond and the Gray Diamond (hereinafter referred to as the "Diamonds") were "stolen directly from [the Victim] as a result of the mail fraud scheme." *Id.* at 28. On May 10, 2024, this Court sentenced Defendant to 17 years in prison. Dkt. 95. This Court determined the Diamonds were proceeds obtained by the Defendant during

2

his mail fraud scheme and entered an amended preliminary order of forfeiture for direct assets. Dkt. 93.

## SUMMARY OF THE COMPETING CLAIMS FILED TO CONTEST FORFEITURE OF THE DIAMONDS

### I.     West's Petition as to the Gray Diamond

On or about June 20, 2024, West filed a verified petition contesting the forfeiture of the Gray Diamond. Dkt. 115. In the petition, West asserts he has standing to challenge the Government's forfeiture claim since West has "both an ownership and a possessory interest in the Gray Diamond" and will suffer economic and reputational harm if the Gray Diamond is forfeited. Dkt. 115 at 8.

On September 23, 2022, West purchased the Gray Diamond from Australian Diamond Supply Ltd. ("ADS"), a diamond dealer, in New York City. *Id.* at 3–4. West asserts that he believed ADS had good or voidable title to the Gray Diamond, which provided West with good title to the Gray Diamond following his purchase. *Id.* at 8.

Consequently, West argues that he is a bona fide purchaser of the Gray Diamond under 21 U.S.C. § 853(c). *Id.* at 9. West supports his argument by contending that neither the Gray Diamond itself nor the price of the transaction reasonably put West on notice that the Gray Diamond was connected to criminal activity or that it was subject to forfeiture. *Id.* at 9–10.

West also asserts that he detrimentally relied upon the Government's conduct and words that the Gray Diamond would not be subject to forfeiture. *Id.* at 9. Three months after West turned over the Gray Diamond to the Government, the U.S. Attorney's Office informed West that it had completed its investigation and valuation of the Diamond and would return it. *Id.* at 6. Following the Gray Diamond's return on November 20, 2023, West resumed showing it to potential customers, including one European luxury brand that began preparation to buy the Diamond. *Id.* at 7. However, in April 2024, the U.S. Attorney's Office reversed course and informed West that it intended to seek forfeiture of the Gray Diamond. *Id.* West contends that he will suffer reputational harm from the forfeiture of the Gray Diamond after detrimentally relying on the Government's statement that the Diamond would not be subject to forfeiture. *Id.* at 9. Therefore, West argues the Government should be estopped from seeking the forfeiture of the Gray Diamond. *Id.* 9–10.

Finally, in West's response to the Government's Motion to Dismiss, he asserts two additional arguments. First, West argues there is no "case or controversy" for this Court to resolve so this proceeding is moot. Dkt. 135 at 7–8. West states this Court is not the "proper forum" to resolve the competing claims among the petitioners. *Id.* at 8. Second, West claims this ancillary proceeding violates the

Seventh Amendment by failing to provide a jury to resolve the competing interests in the Gray Diamond. *Id.* at 10–12.

## II.   The Grunbergs' Petition as to the 103 Carat Diamond

On or about March 21, 2024, the Grunbergs filed a verified petition contesting the forfeiture of the 103 Carat Diamond. Dkt. 64. In the petition, the Grunbergs state that in the summer of 2022, they agreed to loan $4 million to a "Trusted Counterparty" (later identified as Solomon Moyal of Ronsol Enterprise, a New Jersey jeweler). *Id.* at 2. In return, the Grunbergs took possession of the 103 Carat Diamond as collateral for the loan. *Id.*[1] The Grunbergs assert they hold an enforceable security interest in the 103 Carat Diamond, which was perfected under New York law when they took possession of the Diamond. *Id.* at 4–5. No written contract or memorial exists of this transaction since both parties orally agreed to the loan. Dkt. 79 at n.3.

The Grunbergs' central argument is that when they took possession of the 103 Carat Diamond, they were bona fide purchasers under 21 U.S.C. § 853(n)(6)(B) and therefore have standing to contest its forfeiture or disposition. Dkt. 64 at 5. Based on the circumstances of the loan with a "trusted counterparty," the Grunbergs argue

---

[1] The United States disputes this version of events. *See* Dkt. 131 at n.3. The United States notes that Moyal (via counsel) advised the Government that he sold the 103 Carat Diamond to the Grunbergs. *Id.* For purposes of this Order, the Court assumes the 103 Carat Diamond was used as collateral as asserted in the Grunbergs' petition.

they were reasonably without knowledge to believe the diamond was involved in any violation of the law or was subject to forfeiture. *Id.*

In response to the United States' initial Motion to Strike and/or Dismiss the Grunbergs' verified petition, Dkt. 74, the Grunbergs filed a memorandum of law raising several substantive arguments supporting their core assertion that they hold a valid legal interest in the 103 Carat Diamond and therefore have standing to contest its forfeiture and/or disposition. Dkt. 79.

### *a.* *Argument 1- Defendant had the Power to Transfer the Rights in the 103 Carat Diamond under the Merchant Entrustment Rule*

The Grunbergs first assert that Defendant never "stole" the 103 Carat Diamond from the Victim. *Id.* at 6.  Rather, the Grunbergs argue that Defendant "swindled the Diamond from M.S. and/or the Victim, and then 'sold or bartered' the Diamond to Mr. Moyal who purchased it as a bona fide purchaser in the ordinary course of business." *Id.* Based on this premise, the Grunbergs insist that Defendant was a "merchant" under New Jersey's merchant entrustment rule and therefore had the power to transfer ownership rights in the 103 Carat Diamond to Moyal. *Id.* Indeed, the Grunbergs' memorandum claims—with no support beyond conclusory statements—that the Victim "entrusted" the Defendant with the 103 Carat Diamond. *Id.* at 8.

However, the Grunbergs do point to language in the indictment, Dkt. 15, to support their argument that Defendant meets the UCC definition of a "merchant."

Dkt. 79 at 9–10. Since the indictment alleges that the Defendant represented himself as authorized to sell valuables like the 103 Carat Diamond (and ultimately fenced valuables like the Diamond), the Grunbergs contend the Defendant must be a "merchant" for purposes of the merchant entrustment rule. *Id.*

> b. *Argument 2- Defendant's Conveyance of Title to Moyal was Valid under Well-Settled New Jersey Common Law Principles of Estoppel*

Next, the Grunbergs argue that if New Jersey's merchant entrustment rule does not apply, the Victim would still be estopped under New Jersey law from challenging the transfer of title to Moyal. *Id.* at 10–11.

The Grunbergs look to New Jersey's common law rule that between two innocent victims of fraud, the one who created the circumstances that made the wrongful act possible must suffer the loss. *Id.* (citing *Tumber v. Automation Design & Mfg. Corp.*, 324 A.2d 602, 606 (N.J. Sup. Ct. 1974)). Based on this equitable rule, the Grunbergs argue the Victim should be estopped from claiming the 103 Carat Diamond since the Grunbergs (who are also victims of the Defendant's scheme) did not make the wrongful act by the Defendant possible. *Id.* at 11. Rather, it was M.S. and the Victim who committed the wrongful act by "sending the Diamond to the Defendant." *Id.* at 11–12 The Grunbergs' memorandum does not provide any support for the claim that the Victim knew about, consented to, or allowed M.S. to send the Diamonds to the Defendant.

    *c.  Argument 3- Defendant had Voidable Title in the Diamond and Could Convey Valid Title to Moyal*

    The Grunbergs' third argument is that the Defendant had "voidable" title in the 103 Carat Diamond. New Jersey law allows a person with "voidable" title the power to transfer good title to a good faith purchaser. *Id.* at 12; N.J. Stat. Ann. § 12A:2-403(1). Conversely, a person who holds "void" title cannot transfer good title to a subsequent purchaser for value. Dkt. 79 at 12.

    The Grunbergs push back on the Government's argument that the Defendant had "void" title to the 103 Carat Diamond when he stole it from the Victim. *Id.* Instead, the Grunbergs argue that Defendant did not steal the diamond at all since the indictment states that Defendant obtained the valuables "by means of false and fraudulent pretenses." *Id.* at 12-13; Dkt. 15 ¶ 8. Accordingly, since the 103 Carat Diamond was acquired through fraud rather than theft, the Defendant had "voidable" rather than "void" title. With "voidable" title, the Defendant was allegedly free to convey good title to a good faith purchaser like Moyal. Dkt. 79 at 13.

    *d.  Argument 4- Due to the Loan to Moyal, the Grunbergs have an Enforceable Security Interest in the Diamond*

    Finally, the Grunbergs turn to New York law (since the purported loan took place in New York) and argue they have a valid and enforceable security interest in the 103 Carat Diamond. *Id.* at 14. Since the Grunbergs took possession of the 103 Carat Diamond as collateral for the loan given to Moyal, they ostensibly have a valid

and perfected security interest in the Diamond under New York law, regardless of the lack of any formal documentation or written contract between the parties. *Id.* at 15.

### III.    The Victim's Petition for Both Diamonds

On or about June 26, 2024, the Victim submitted a petition for an ancillary proceeding pursuant to 21 U.S.C. § 853(n)(6)(A) and Federal Rule of Criminal Procedure 32.2. Dkt. 123. The Victim claims title to the Gray Diamond and the 103 Carat Diamond stolen by Defendant and M.S. Dkt. 123 at 1.

The United States supports the Victim's petition and agrees that Victim is the rightful owner of the Diamonds. Dkt. 131 at n.1. Indeed, the United States has no intention to seek a final order of forfeiture for the Diamonds. Rather, it intends to return the stolen jewelry to its rightful owner, the Victim. *Id.*

In the Victim's petition, several arguments are raised in support of his claim. First, the Victim asserts that he is the original and rightful owner of the Gray Diamond and the 103 Carat Diamond. Dkt. 123 at 3–4. In June 2009, the Victim purchased the Gray Diamond as part of a 17.42 carat platinum diamond ring from Moussaieff Jewelers Ltd. for $1,742,000. *Id.* at 3. On February 27, 2008, the Victim purchased from Chatila Jewelers the 103 Carat Diamond, which was a key part of a diamond necklace, for $22,100,000. *Id.* at 4. The Victim's petition provides documentation for both purchases. *See* Dkts. 123-1 & 123-4.

Second, the petition argues Defendant schemed to steal the Gray Diamond and the 103 Carat Diamond from the Victim. *Id.* at 5. The Victim clearly asserts M.S. never had any consent or permission to take the Victim's jewelry. *Id.* Rather, Defendant directed M.S. on several occasions to enter the Victim's safe, take the jewelry, and send them to the United States via FedEx. *Id.* The Victim never learned about the theft until M.S. came forward in the summer of 2022 to admit the theft. *Id.*

Finally, the Victim argues that no other petitioner has standing to contest the forfeiture of the Diamonds. *Id.* at 10. The petition contends that any other petitioner cannot show that they have a legal interest in the Diamonds since the Defendant, as a thief, failed to obtain any title that could be passed on to subsequent purchasers. *Id*. Based on this premise, the Victim's petition argues the claims made by West and the Grunbergs must fail since neither party can be a bona fide purchaser due to the original theft by M.S. and Defendant. *Id.* at 10–11.

## DISCUSSION

Based on the review of the motions, verified petitions, and the record, the Court grants the Government's and the Victim's motion to dismiss. As discussed below, neither the Grunbergs nor West has demonstrated that they hold a legal interest in the 103 Carat Diamond and Gray Diamond. Thus, the petitioners lack standing to contest the forfeiture of these Diamonds pursuant to Federal Rule of Criminal Procedure 32.2(c)(1)(A) and 21 U.S.C. § 853(n)(3).

## I.    Legal Standard for a Criminal Ancillary Proceeding

An ancillary forfeiture proceeding is governed by 21 U.S.C. § 853 and Federal Rule of Criminal Procedure 32.2. *See United States v. Davenport*, 668 F.3d 1316, 1320 (11th Cir. 2012). This proceeding provides an avenue for third parties to challenge the validity of the forfeiture order by establishing a legitimate ownership interest. *See United States v. Marion*, 562 F.3d 1330, 1336 (11th Cir. 2009); *Libretti v. United States*, 516 U.S. 29, 44 (1995) ("[T]hird-party claimants can establish their entitlement to return of the [forfeited] assets only by means of the hearing afforded under 21 U.S.C. § 853(n).")

The petitioner must first timely file a verified claim for a hearing to adjudicate the validity of their alleged interest under 21 U.S.C. § 853(n)(2). Under 21 U.S.C. § 853(n)(6), a petitioner may prevail if he can demonstrate, by a preponderance of the evidence, that he either (1) has a superior legal interest in the forfeited property at the time the defendant's interest vested through the commission of the act giving rise to the forfeiture, or (2) is a bona fide purchaser reasonably without cause to believe the property is subject to forfeiture. 21 U.S.C. § 853(n)(6); *United States v. Kennedy*, 201 F.3d 1324, 1328 (11th Cir. 2000).

Additionally, there is no right to a jury trial in a criminal ancillary forfeiture proceeding. *See* 21 U.S.C. § 853(n)(2) ("The hearing shall be held before the court alone, without a jury."); *United States v. McHan*, 345 F.3d 262, 275–76 (4th Cir.

2003) (holding there is no Seventh Amendment right to a jury trial in ancillary criminal proceedings); *Libretti*, 516 U.S. at 44 (declining to consider an argument that claimant's rights were inadequately protected under a § 853(n) hearing since it deprives claimants of the right to a jury trial).[2]

## II.    Legal Standard for a Motion to Dismiss a Verified Petition

In a motion to dismiss a verified petition, a court may dismiss a third-party petition "for lack of standing, for failure to state a claim, or for any other lawful reason." Fed. R. Crim. P. 32.2(c)(1)(A). In the criminal forfeiture context, a motion to dismiss for lack of standing should be treated like a motion to dismiss a civil complaint under Federal Rule of Civil Procedure 12(b)(1), not 12(b)(6). *See Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Svs.*, Inc., 524 F.3d 1229, 1232 (11th Cir. 2008) (citing *Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1203 n.42 (11th Cir. 1991)) (noting a motion to dismiss for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under 12(b)(1)); *United States v. Negron-Torres*, 876 F. Supp. 2d 1301, 1303 n.1 (M.D. Fla. 2012) ("This motion to dismiss is essentially a challenge to the Court's jurisdiction under Rule 12(b)(1) and matters outside of the record are allowed to be considered."); *Alliance for Envtl.*

---

[2] West claims this ancillary proceeding violates the Seventh Amendment by failing to provide a jury trial. Dkt. 135 at 10–12. West also contends the recent Supreme Court decision in *SEC v. Jarkesy*, 603 U.S. __ (2024) supports his position. Dkt. 135 at 10. However, the *Jaresy* decision involved SEC penalties against a defendant in a non-jury administrative proceeding. Here, 21 U.S.C § 853(n)(2) clearly authorizes this Court to adjudicate the competing third-party claims in the forfeited diamonds without a jury.

*Renewal, Inc.*, 436 F.3d 82, 88 n.6 (2d Cir. 2006) (noting a motion to dismiss for lack of standing is properly analyzed under Federal Rule of Civil Procedure 12(b)(1) rather than Rule 12(b)(6) because it concerns "the authority of a federal court to exercise jurisdiction").

When resolving a motion to dismiss under Rule 12(b)(1), the court is permitted to examine evidence outside the pleadings in resolving the motion. *See Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990); *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); *United States v. Emor*, 785 F.3d 671, 677 (D.C. Cir. 2015) ("A district court deciding a motion to dismiss on jurisdictional grounds, such as standing, may consider evidence outside the complaint."); *Negron-Torres*, 876 F. Supp. 2d at 1303 n.1 (looking at matters outside the record and granting motion to dismiss the third-party petition for lack of standing).[3]

A petitioner must have both Article III standing and statutory standing to contest the forfeiture of property. *Via Mat Int'l S. Am. Ltd. v. United States*, 446 F.3d 1258, 1262–63 (11th Cir. 2006). When determining if there is Article III standing, the petitioner need not show he has an ownership interest, a mere possessory interest

---

[3] West's Memorandum of Law in Opposition to the United States' Motion to Dismiss also argues this Court is "not permitted to consider facts outside the pleadings." Dkt. 135 at 12. West might be correct if the Government's and the Victim's motions to dismiss were for failures to state a claim under Rule 12(b)(6). *See Emor*, 785 F.3d at 677. However, the Government and the Victim's motions to dismiss are for a lack of standing under Rule 12(b)(1), which permits the Court to look at the underlying criminal case record when adjudicating the competing claims.

is enough. *United States v. Hassan*, 411 F. Supp. 3d 1302, 1307 (M.D. Fla. 2019) (citing *Via Mat*, 446 F.3d at 1262).

For statutory standing, 21 U.S.C. § 853(n)(2) requires a petitioner to have "a *legal interest* in property which has been ordered forfeited to the United States. . ." 21 U.S.C. § 853(n)(2) (emphasis added). The court must look to state law to determine if a legal interest has been created. *See Kennedy*, 201 F.3d at 1334. If a petitioner has no legal interest in the forfeited property under applicable state law, that is the end of the matter, "the inquiry ends, and the claim fails for lack of standing." *United States v. Timley*, 507 F.3d 1125, 1130 (8th Cir. 2007); *see also Hassan*, 411 F. Supp. 3d at 1307 (granting motion to dismiss for lack of statutory standing since the petitioner lacked a legal interest under Florida law); *Negron-Torres*, 876 F. Supp. 2d at 1305 (same). Discovery and a hearing are not required prior to ruling on the United States' motion to dismiss. *See United States v. Salti*, 579 F.3d 656, 664 (6th Cir. 2009); *Hassan*, 411 F. Supp. 3d at 1307.

### III. West Lacks Statutory Standing to Contest the Forfeiture of the Gray Diamond

> a. *This Court is the Proper Forum to Resolve the Competing Claims Over the Gray Diamond, and there is still a Valid Case or Controversy for this Court to Adjudicate*

This Court rejects West's argument that this ancillary proceeding is moot due to the Government's desire to return the stolen Diamonds to the Victim. It is well established that Article III vests the judiciary with jurisdiction over "Cases" and

"Controversies." U.S. CONST. ART. III, § 2. "A case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief." *De La Teja v. United States*, 321 F.3d 1357, 1362 (11th Cir. 2003) (quoting *Ethredge v. Hail*, 996 F.2d 1173, 1175 (11th Cir.1993)). In an ancillary forfeiture proceeding, once a court determines property is subject to forfeiture, 21 U.S.C. § 853(n) becomes the *only* proceeding in which title can be litigated by third party claimants. *See Libretti*, 516 U.S. at 44; *Davenport*, 668 F.3d at 1320 ("An ancillary proceeding constitutes the sole means by which a third-party claimant can establish entitlement to return of forfeited property.").

Moreover, Federal Rule of Criminal Procedure 32.2(c)(3) undoubtedly contemplates an ancillary proceeding where a court must resolve "multiple third-party petitions" over the same property. *See* Fed. R. Crim. P. 32.2(c)(3); *United States v. Chowaiki*, 369 F. Supp. 3d 565, 577 (S.D.N.Y. 2019) (dismissing multiple claims of interest in Picasso's "Le Clown" in an ancillary forfeiture proceeding). Indeed, an ancillary proceeding is functionally "a competition over ownership priority with the court determining the superior title." *McHan*, 345 F.3d at 275.

Here, there is still a viable case or controversy for this Court to adjudicate. West's assertion that "this ancillary proceeding is to determine whether the United States is entitled to obtain a final order of forfeiture of the Gray Diamond," Dkt. 135 at 6, misconstrues the purpose of 21 U.S.C. § 853(n). This Court is currently tasked

with resolving the competing ownership interests filed for the Gray Diamond. *See* Dkts. 115 & 123. The present issue before the Court is *not* whether the Government is entitled to obtain a final order of forfeiture; rather, the only issue in this ancillary proceeding is who has a legitimate ownership interest in the Gray Diamond that has been ordered forfeited. *See Negron-Torres*, 876 F. Supp. 2d at 1304; *United States v. Gilbert*, 244 F.3d 888, 911 (11th Cir. 2001), *superseded in part on other grounds as stated* in *Marion*, 562 F.3d at 1341 ("[An] ancillary proceeding is essentially a quiet title proceeding.").

Contrary to West's claims, the Court will only issue a final order of forfeiture after this ancillary proceeding *ends*. *See* Fed. R. Crim. P. 32.2 (c)(2) ("When the ancillary proceeding *ends*, the court must enter a final order of forfeiture by amending the preliminary order as necessary to *account for any third-party rights*.") (emphasis added); 21 U.S.C. § 853(n)(7) ("Following the court's *disposition of all petitions filed* under this subsection . . . the United States shall have clear title to property that is the subject of the order of forfeiture. . .") (emphasis added).

Therefore, there is still a viable case or controversy since this Court must resolve West's and the Victim's competing petitions in the Gray Diamond. *See* Dkts. 115 & 123. For the reasons discussed below, this Court dismisses West's verified petition for lack of standing.

   b. *The Defendant's Theft of the Gray Diamond means He had No Rights*
      *in the Diamond and Any Subsequent Purchaser only has Void Title*
      *Under New York Law.*

This Court dismisses West's verified petition for lack of standing because he

has no legal interest in the Gray Diamond. West's petition is based on the premise

that the seller of the Gray Diamond (i.e., ADS) had "good title or voidable title" to

the Gray Diamond. Dkt. 115 at 8. However, West's petition fails to point to anything

in the record that supports the proposition that ADS received "good or voidable"

title from the Defendant. Contrary to West's petition, the record shows the

Defendant stole the Gray Diamond; therefore, any subsequent buyer only had "void"

(not voidable) title under New York law. *See Candela v. Port Motors*, 208 A.D.2d

486, 487 (App. Div. 1994).

The sale of the Gray Diamond occurred in New York, so the Court must look

to New York law to determine if a legal interest has been created. *Kennedy*, 201 F.3d

at 1334. In New York, it is well established that a thief cannot pass good title to

buyers who purchase the stolen property. *See Bakalar v. Vavra*, 619 F.3d 136, 140–

41 (2d Cir. 2010) (finding that under New York law "a thief cannot pass good title,

. . . even if there have been several subsequent buyers and even if each of those

buyers was completely unaware that she was buying stolen goods"). Indeed, New

York has "long protected the right of the owner whose property has been stolen to

recover that property, even if it is in the possession of a good-faith purchaser for

value." *Id.* at 141 (quoting *Solomon R. Guggenheim Found. v. Lubell*, 77 N.Y.2d 311, 317 (1991)). This rule "reflects an overarching concern that New York not become a marketplace for stolen goods." *Id.*

Here, ADS did not acquire any rights in the Gray Diamond because the Victim, as the true owner of the Gray Diamond, lost the jewel due to the Defendant's theft. The record shows that the Defendant directed M.S. to enter the Victim's home on multiple occasions and removed numerous valuables (including the Gray Diamond) from the Victim's safe without his knowledge or consent. *See* Dkts. 36 at 26; 56 at 3; 105 at 52:19-23; 123-5. Indeed, there is even video evidence of M.S. entering the Victim's safe on at least four occasions to steal diamonds and other jewelry. Dkt. 1 at 12–16. Most importantly, the Defendant has admitted the Gray Diamond was "stolen directly" from the Victim. Dkts. 36 at 28; 105 at 51:7-9.

Since Defendant only had void title as a thief, Defendant could not convey any good or voidable title to subsequent purchasers like ADS under New York law. *See Candela*, 208 A.D.2d at 487 (noting if a party purchased a vehicle from a thief, or the successor of a thief, the party could not convey good title to a subsequent purchaser for value since the party's title would be void, not merely voidable). Therefore, West could not have acquired any legal interest from ADS because ADS only had void title in the Gray Diamond. *See Vavra,* 619 F.3d at 140–41.

        *c. West's Equitable Estoppel Argument Due to the Government's Misstatement Fails*

West also argues he "detrimentally and reasonably relied" upon the Government's statement that it would not seek forfeiture of the Gray Diamond and that West would suffer economic and reputational harm if the Gray Diamond were forfeited. Dkt. 115 at 9.

While the Government admits its erroneous (and rescinded) representation was made because of an internal miscommunication, Dkt. 131 at 17, West's estoppel argument has already been rejected in the criminal forfeiture context. *See United States v. McCorkle*, 321 F.3d 1292, 1296–97 (11th Cir. 2003) (holding that even if the equitable estoppel doctrine could be invoked in a criminal forfeiture context, a claimant would also need to show affirmative misconduct by the government, which requires more than governmental negligence or inaction); *Savoury v. U.S. Atty. Gen.*, 449 F.3d 1307, 1319 (11th Cir. 2006) (noting the estoppel defense in the immigration context also requires a showing that the government engaged in affirmative misconduct). There is nothing in the record that indicates the Government's misstatements went so far as to become affirmative misconduct. Nor does West's petition point to any affirmative misconduct committed by the Government beyond the misstatements.

Furthermore, the sole concern in an ancillary proceeding is the "validity of the alleged interest, not any resulting impact of the forfeiture" like economic or

reputational harm. *Hassan*, 411 F. Supp. 3d at 1309–10 (noting the economic hardship faced by the petitioner is unfortunately not a concern in an ancillary forfeiture proceeding); 21 U.S.C. § 853(n)(2) ("[A] hearing to adjudicate the validity of his alleged interest in the property.").

Accordingly, the Court dismisses West's verified petition for lack of standing because he has no legal interest in the Gray Diamond, and the Court rejects any equitable remedy as inapplicable in this ancillary forfeiture proceeding.

## IV.   The Grunbergs Lack Statutory Standing to Contest the Forfeiture of the 103 Carat Diamond

Like West, the Grunbergs do not have standing to contest the forfeiture of the 103 Carat Diamond since they lack a legal interest in the Diamond. As discussed above, the Grunbergs claim their possession of the 103 Carat Diamond as collateral for the loan with Moyal created a valid legal interest under 21 U.S.C. § 853(n)(2). Dkt. 79 at 6. However, the Defendant's theft of the 103 Carat Diamond means no valid title could ever be conveyed to Moyal. Additionally, the Grunbergs' claim that the Victim and M.S. "entrusted" the 103 Carat Diamond with the Defendant is wholly unsupported by the record and is rejected by this Court.

### a.   *The Defendant, as a Thief, Could Not Convey any Legal Title in the 103 Carat Diamond to Moyal*

The Court must first consider Moyal's interest in the 103 Carat Diamond as the alleged debtor in the Grunbergs' loan. Moyal's interest will be determined under

New Jersey Law since the sale between Moyal and the Defendant took place in New Jersey. *Kennedy*, 201 F.3d at 1334. In New Jersey, as in New York, it is well-settled that a thief acquires no title to the goods he steals, and thus cannot transfer good title to a good faith purchaser. *See O'Keefe v. Snyder*, 416 A.2d 862, 867 (N. J. 1980); *Touch of Class Leasing v. Mercedes-Benz Credit of Canada, Inc.*, 591 A.2d 661, 667 (N.J. Super Ct. App. Div. 1991) ("[I]f a party merely converts the goods to his own use after obtaining possession through some manner other than a transaction of purchase, he does not possess even voidable title. Rather, he possesses void title and therefore, cannot pass good title even to a good faith purchaser for value.").

However, under the New Jersey Uniform Commercial Code, a "good faith purchaser" rule does permit "a person with *voidable title* . . . to transfer good title to a good faith purchaser for value." N.J.S.A. § 12A:2-403(1) (emphasis added). In other words, New Jersey law "provides that the sale to a good faith purchaser for value cures the defects in the seller's voidable title. However, it cannot cure *void* title." *Touch of Class Leasing*, 591 A.2d at 667 (emphasis added). A seller may acquire voidable title when he obtains delivery of the goods through a "transaction of purchase." *See* N.J.S.A. § 12A:2-403(1). The phrase "transaction of purchase" is "generally limited to those situations in which a third party delivers goods to a subsequent seller, intending for the subsequent seller to become the owner of the goods." *Touch of Class Leasing*, 591 A.2d at 667.

Here, Defendant only possessed *void* title in the stolen 103 Carat Diamond under New Jersey law. At no point did the Defendant ever obtain the 103 Carat Diamond via a "transaction of purchase." The record is devoid of any evidence that the Victim ever delivered the 103 Carat Diamond to the Defendant with the intent that the Defendant receive ownership. *See* Dkts. 123-5; 105 at 52:19-23. The underlying record demonstrates the Defendant obtained the 103 Carat Diamond after converting it from the Victim. *See* Dkts. 36 at 26; 56 at 3; 105 at 53:4-25. The Defendant's admission that the 103 Carat Diamond was "stolen directly" from the Victim means he only possessed void title to the Diamond. Dkt. 36 at 28. Any subsequent transfer to a buyer would fail to convey good or voidable title under New Jersey law. *See Touch of Class Leasing*, 591 A.2d at 667. If Moyal never had valid title, then the Grunbergs could never receive valid title, regardless of whether they bought the 103 Carat Diamond as good faith purchasers.

However, the Grunbergs point to the indictment, Dkt. 15, and argue the alleged facts prove the 103 Carat Diamond was never stolen but obtained via "false and fraudulent pretenses." Dkt. 79 at 12–13; Dkt. 15 ¶ 8. This argument misses the mark. While the language of the indictment may use words like "scheme" and "fraudulent," the record clearly demonstrates the Defendant defrauded M.S. and stole the Victim's 103 Carat Diamond. *See* Dkts. 1 at 13–16; 36 at 28; 56 at 3; 105 at 34:15-23, 53:21-25. The Grunbergs' suggestion that the 103 Carat Diamond was

never stolen (but obtained via fraud) is an attempt to relitigate the forfeitability of the Diamond, which is prohibited in this ancillary proceeding. *See Davenport*, 668 F.3d at 1321 ("[T]he ancillary proceeding for third-party claimants 'does not involve relitigation of the forfeitability of the property,' which has already been ordered in the criminal case. The ancillary proceeding is only for the purpose of determining 'whether any third party has a legal interest in the forfeited property.'"). Accordingly, the Grunbergs cannot satisfy the statutory standing requirement because any legal interest the Grunbergs had in the 103 Carat Diamond would be void under New Jersey law.

> b. *New Jersey's Merchant Entrustment Rule does not Apply to the Defendant's sale of the 103 Carat Diamond*

New Jersey's merchant entrustment rule is inapplicable since Defendant never had the power to transfer rights in the 103 Carat Diamond to Moyal in the first place. N.J.S.A. § 12a:2-403(2) provides that "[a]ny entrusting of possession of goods to a merchant who deals in goods of that kind gives the merchant power to transfer all rights of the entruster to a buyer in the ordinary course of business." N.J.S.A. § 12A:2- 403(2); *Martin v. Nager*, 469 A.2d 519, 526 (Ch. Div. 1983). Under this provision, three elements must be met to acquire good title: "(1) an entrustment of goods, (2) to a merchant who deals in goods of the kind, (3) followed by a sale to a buyer in the ordinary course of business." *Touch of Class Leasing*, 591 A.2d at 668. Entrustment can include "any delivery and any acquiesence in retention of

possession . . . regardless of whether the procurement of the entrusting or the possessor's disposition of the goods have been such as to be theft under the criminal law." N.J.S.A. § 12A:2-403(3).

Here, element one fails because the Victim never entrusted the Defendant with the 103 Carat Diamond. Again, there is no evidence in the record that the Victim delivered or acquiesced to the Defendant's possession of the 103 Carat Diamond. Rather, the record shows the Victim had no knowledge that his valuables were being stolen by a trusted employee and mailed to the Defendant. *See* Dkts. 1 at 13–16; 36 at 26–27; 56 at 3; 105 at 52:19-23; 123-5. The only possible "entrustment" of the 103 Carat Diamond would be M.S. shipping the jewel to the Defendant. While M.S. may have "entrusted" the Diamond with Defendant to have it "cleansed" of "bad spirits," the Victim had never permitted nor consented to M.S.'s removal of any valuable from his safe. *See* Dkts. 105 at 41:10-18, 42:1-3, 52:19-21. Thus, the Victim had never delivered or acquiesced to M.S.'s possession of the 103 Carat Diamond either.

Additionally, element two fails since the Defendant is not a "merchant" under N.J.S.A. § 12A:2-403(2). The provision "applies only to a 'merchant who deals in goods' of the kind entrusted, meaning one who is engaged regularly in selling goods of the kind." *Touch of Class Leasing*, 591 A.2d at 668 (citations omitted). The Defendant's Presentence Investigation Report reveals that the Defendant did not

24

regularly engage in the sale of jewelry or other valuable gems prior to the instant offense. *See* Dkt. 51 at ¶¶ 66-68. Since the age of 18, the Defendant has only been working as a "psychic reader/advisor" along with dabbling as a freelance interior decorator. *Id.* at ¶¶ 66, 68.

In sum, Defendant is neither a "merchant" who deals in the buying and selling of diamonds nor did the Victim ever "entrust" his jewelry with the Defendant or M.S. Accordingly, New Jersey's merchant entrustment rule is inapplicable since the Defendant never received any power or rights to transfer the stolen 103 Carat Diamond.

### c. *The Grunbergs' Estoppel Defense under New Jersey Law Fails*

Next, the Court rejects the Grunbergs' argument that New Jersey law estops the Victim from challenging the transfer of the 103 Carat Diamond to Moyal. Dkt. 79 at 10–11. New Jersey law has recognized that "between two innocent victims of fraud, the one who created the circumstances which made the wrongful act possible must suffer the loss." *Tumber v. Automation Design & Mfg. Corp.*, 324 A.2d 602, 606 (N.J. Sup. Ct. 1974).

In support of their position, the Grunbergs rely on *Zendman v. Harry Winston*, *Inc.*, 111 N.E.2d 871 (N.Y. 1953). In *Zendman*, the plaintiff Jane Zendman bought a ring at an auction house. *Zendman*, 111 N.E.2d at 872. The ring had been originally loaned to the auction house by Harry Winston, who provided specific instructions

on when the ring could be sold. *Id.* at 873. Despite the original owner's instructions, the auction house erroneously sold the ring to Zendman. *Id.* Applying New Jersey law, the New York Court of Appeals found that Winston was estopped from asserting title due to his actions of permitting the auction house to publicly display the ring, making no effort to inform the public the ring was not for sale, and his prior course of dealing with the auction house where items sold were never accompanied by specific instructions. *Id.* at 876. Thus, Zendman could rely on the auction house's apparent authority to sell the ring. *Id.*

Here, the Grunbergs' reliance on *Zendman* is misplaced. The Grunbergs insist that the case is "on all fours" with the instant proceeding, Dkt. 79 at 11, but a review of the record proves otherwise. Unlike the original owner of the ring in *Zendman*, there is no evidence that the Victim ever loaned the 103 Carat Diamond to the Defendant with specific instructions on when it could be sold. *See* Dkts. 36 at 26–27; 105 at 52:19-21; 123-5. Nor is there any evidence of a prior course of dealing between the Defendant and the Victim for the sale of jewelry or diamonds. *See* Dkts. 51 at ¶¶ 66-68; 105 at 51:7-9, 52:19-23; 123-5. However, there is ample evidence in the record that the 103 Carat Diamond was one of many valuables stolen by M.S. and the Defendant. *See* Dkts. 1 at 13–16; 36 at 28; 56 at 3. Indeed, the Victim never even knew about the theft of the 103 Carat Diamond until M.S. informed him of the theft. *See* Dkts. 36 at 27; 123-5.

Moreover, the Grunbergs' conclusory allegation that the Victim and M.S. "made the wrongful act by the Defendant possible" by sending the 103 Carat Diamond to the Defendant, Dkts. 79 at 11–12; 134 at 14, is unsupported by the record. Neither the Grunbergs' response to the Government's Motion to Dismiss nor their Omnibus Opposition to the Government's Amended Motion to Dismiss cite any evidence in the record to substantiate their claim. *See* Dkts. 79 at 11–12; 134 at 14. Accordingly, the Court rejects the Grunbergs' argument that the Victim is estopped from challenging the transfer of title to Moyal under New Jersey law.

> ### d. *The Alleged Security Agreement Formed Between Moyal and the Grunbergs does not Provide any Legal Interest in the 103 Carat Diamond*

Finally, the Grunbergs also assert they loaned Moyal $4 million in exchange for a security interest in the 103 Carat Diamond. Dkt. 64 at 2. Assuming the existence of the oral loan, the Grunbergs still lack a legal interest in the Diamond since Moyal (as the debtor) never had any rights in the collateral or power to transfer the collateral to a secured party (i.e., the Grunbergs).

Under New York's Uniform Commercial Code, a security interest is enforceable only if: "(1) value has been given; (2) the debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party…" N.Y. U.C.C. § 9-203(b). "Notwithstanding any agreement between the debtor and the creditor, if the debtor has no rights in the collateral, no security interest in that

collateral comes into existence." *Matter of Emergency Beacon Corp.*, 665 F.2d 36, 40 (2d Cir. 1981).

Here, the Grunbergs (the secured party) never received a valid security interest in the collateral (the 103 Carat Diamond) because Moyal (the debtor) never had any rights in the collateral in the first place. As discussed above, New York law states that neither the thief nor the good faith buyer who purchases stolen property can convey good title. *See Vavra*, 619 F.3d at 140–41; *Reif v. Nagy*, 61 Misc. 3d 319, 323 (N.Y. Sup. Ct. 2018). The theft of the 103 Carat Diamond by the Defendant means any subsequent sale to Moyal is void and without good title. *See* Dkt. 36 at 28; *Candela*, 208 A.D.2d at 487; *see also Gemological Inst. of Am., Inc. v. Zarian Co.*, No. 03 CIV. 4119 (RLE), 2006 WL 2239594, at *3 (S.D.N.Y. Aug. 4, 2006) ("Because the Court has already determined that the diamond was stolen from [the original owner] in Dubai, if the sale or transfer took place in New York, the diamond is rightfully [the original owner's].");  *DiLorenzo v. General Motors Acceptance Corp.*, 814 N.Y.S. 2d 750, 750 (App. Div. 2006) (stating that "[a] person who . . . innocently purchases stolen property from a thief, nonetheless acquires no title to that property"). If Moyal never received good title to the Diamond, then he never had the right to use the 103 Carat Diamond as collateral in a loan with the Grunbergs. Accordingly, the alleged security agreement between Moyal and the Grunbergs fails to provide the Grunbergs with any legal interest in the 103 Carat Diamond.

## CONCLUSION

The Court finds West and the Grunbergs lack standing to challenge the forfeiture of the Diamonds under 21 U.S.C. § 853(n). Because the Defendant stole the Gray Diamond and the 103 Carat Diamond from the Victim, no subsequent buyer could have formed the required legal interest under 21 U.S.C. § 853(n)(2) to challenge the Diamonds' forfeiture.

Accordingly, it is hereby **ORDERED** and **ADJUDGED**:

1. The United States' Amended Motion to Dismiss, Dkt. 131, is **GRANTED**.[4]

2. The Victim's Motion to Dismiss Competing Claims, Dkt. 130, is **GRANTED**.

3. The Victim's Petition Claiming Title in the Gray Diamond and 103 Carat Diamond Ordered Forfeited, Dkt. 123, is **GRANTED.**

4. The Grunbergs' Petition to Claim Interest in Forfeited Property, Dkt. 64, is **DISMISSED.**

5. West's Petition Asserting a Legal Interest in Property Ordered Forfeited, Dkt. 115, is **DISMISSED.**

**DONE AND ORDERED** at Tampa, Florida, on August 30, 2024.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

---

[4] The United States' original Motion to Dismiss, Dkt. 74, has been mooted since the Court is granting the United States' Amended Motion. *See* Dkt. 131.